**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

JOEY FRANKLIN ADAMS and
JOANNA DAWN ADAMS,

                Plaintiffs,

v.                                 CIVIL ACTION NO.   5:11-cv-00914

CHRYSLER FINANCIAL COMPANY, LLC,

                Defendant.


**MEMORANDUM OPINION AND ORDER**


The Court has reviewed the *Motion of Defendant, Chrysler Financial Company, LLC in Support of Summary Judgment* (Document 12) and the memorandum in support (Document 13). Plaintiff did not file a response in opposition.   Upon consideration of Defendant's submissions and the entire record, the Court finds, for the reasons stated herein, that Defendant's motion should be granted in part and denied in part.

**I.      BACKGROUND**

On October 11, 2011, Plaintiffs, Joey Adams and Joanna Adams, husband and wife, filed their Complaint in the Circuit Court of Raleigh County, West Virginia, against Defendant, Chrysler Financial Company, LLC ("Chrysler"). ("Compl." (Document 1-1) at 4-9.) Plaintiffs allege that "[a]fter [they] became in arrears upon alleged financial indebtedness to [Defendant], the Defendant began to engage in collection of such indebtedness through the use of telephone calls and through the United States mail." (*Id.* ¶ 5.)   Plaintiffs further allege that "[they] retained

undersigned counsel to represent [their] interests in connection with consumer indebtedness on which [they] had become in arrears." (*Id.* ¶ 6.)   Plaintiffs assert that "[t]hereafter, the Defendant caused a telephone call to be place[d] to Plaintiffs' home [and] [d]uring the telephone call, Plaintiffs informed Defendant's employee that Plaintiffs were represented by an attorney and gave the Defendant their attorney's name and address." (*Id.* ¶¶ 6-7.)   Plaintiffs allege that "[t]hereafter, Defendant continued to cause telephone calls to be placed to Plaintiff's residence." (*Id.* ¶ 8.) Based on that conduct, each Plaintiff alleges repeated violations of the West Virginia Consumer Credit and Protection Act (WVCCPA) and also alleges state tort claims for negligent supervision, intentional infliction of emotional distress, and invasion of privacy.   In their Complaint, Plaintiffs stipulate that "[n]either Plaintiff shall either individually seek or accept an amount greater than $74,999.00 in this case, including any award of attorney fees, but excluding interest and costs." (*Id.* ¶ 10.)

On November 16, 2011, Defendant removed the case to the Southern District of West Virginia, alleging that this Court had jurisdiction pursuant to 28 U.S.C. §§ 1441 and 1446. ("Notice of Removal" (Document 1) at 1-2.)[1] Defendant states that "[it] is a limited liability company with its principal place of business in Michigan, with no members being of West Virginia" and therefore, "[t]here is complete diversity of citizenship among the parties to this matter for the purpose of the Court's exercise of jurisdiction pursuant to 28 U.S.C. § 1332." (*Id.* at 2.)   Defendant also states that the amount in controversy exceeds $75,000, exclusive of interest and cost.   In support, Defendant argues that Plaintiffs' claims may be aggregated to satisfy the amount in controversy requirement because each claim "aris[es] from the same alleged violation

---

[1]  Defendant asserts that removal was timely because "[t]he Summons and Complaint were served upon the West Virginia Secretary of State on October 28, 2011." (*Id.*) (citing "Notice of Removal Ex. B." (Document 1-1) at 11.)

of the [WVCCPA]." (*Id.*)   Plaintiffs did not challenge the removal.   Defendant filed its answer (Document 5) on November 21, 2011.

On December 3, 2012, Defendant filed its Motion for Summary Judgment ("Def.'s Mot.") (Document 12), attached exhibits, and supporting memorandum ("Def.'s Mem.") (Document 13), wherein Defendant "moves this Court for an order granting summary judgment in its favor, there being no genuine issue as to any material fact." (Def.'s Mot. at 1.)   Plaintiffs did not respond to Defendant's motion.

On February 8, 2013, Defendant filed a *Motion in Limine to Deny Plaintiffs Attempt to Change Their Testimony that They First Contacted Timothy P. Lupardus about Representation in Approximately March, 2011* (Document 14).   In support, Defendant cites to Plaintiffs' Answers and Responses to Defendant['s] First Set of Interrogatories, Requests for Production and Requests for Admissions. ("Def.'s Mot. Ex. A" (Document 12 at 3-26) at 1-2.)   In Interrogatory No. 1, when asked to identify the date and time of day they first informed Defendant they were represented by counsel, Plaintiffs responded "[o]n July 26, 2010, 6:19 p.m., . . . [a]lso on July 8, 2012, 1:49 p.m., . . . [o]n July 20, 2010 . . . [and] [o]n July 9, 2010, 1:41 p.m." (Document 14 at 1-2.)   In a subsequent request, Plaintiffs were asked to "[i]dentify the date [they] first contacted Timothy P. Lupardus about representation" to which they answered "[a]pproximately March, 2011." (*Id.* at 1.)   Based on these conflicting answers, Defendant sent Plaintiffs' counsel a letter on September 18, 2012, requesting that Plaintiffs review their records and confirm the accuracy of their Answer. (*Id.* at 2-3.)   Defendant contends that Plaintiffs never responded. (*Id.* at 3.) Therefore, Defendant argues that "Plaintiffs at this late date should not be permitted to revise their sworn testimony that they contacted counsel prior to March, 2011." (*Id.* at 2.)

On February 20, 2013, this Court ordered Defendant to file a statement with respect to this Court's subject matter jurisdiction within seven days of the entry of the Order. (Document 16 at 3.) Plaintiff was also given an opportunity to respond within five days of receipt of Defendant's submission. (*Id.*) Defendant responded on February 25, 2013 (Document 17.) Plaintiffs did not submit any response.

## II.     JURISDICTION

The threshold question for the Court to consider is whether it has federal subject matter jurisdiction in this case.   By statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Defendant removed on the basis of Section 1332, which provides, in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. §1332(a)(1). (Notice of Removal at 2.) Defendant has the burden of establishing diversity jurisdiction by a preponderance of the evidence. (*See White v. Chase Bank USA, NA.,* Civil Action No. 2:08-1370, 2009 WL 2762060, at *1 (S.D.W.Va. Aug. 26, 2009) (Faber, J.) (citing *McCoy v. Erie Insurance Co.,* 147 F.Supp.2d 481, 488 (S.D.W.Va.2001) (Haden, J.)).

In response to the Court's February 20, 2013 Order (Document 16), Defendant filed his Statement with Respect to the Subject Matter Jurisdiction of the Court (Document 17), wherein it argues that the Court has subject matter jurisdiction based on diversity of citizenship. (*Id.* at 1.) Defendant asserts that "[t]here is no dispute that the parties are diverse [and] [t]he only issue is

whether the amount in controversy exceeds $75,000." (*Id.*)[2]  Defendant argues that the amount in controversy does exceed $75,000 because "[their] records evidence more than thirty-five (35) attempts to contact Plaintiff, Joey Adams, about his delinquent loan." (*Id.* at 2) (citing "Ex. B." (Document 17 at 9-22.))   Defendant asserts that damages "at this time are recoverable for each alleged violation in an amount from $100 to approximate[ly] $4,200 (based upon the increase in the Consumer Price Index)." (*Id.* at 4.)   Although, Mr. Adams stipulated that he would not accept "an amount great than $74,900," Defendants argue that because "Mrs. Adams, a non-signatory to the consumer contract executed by Mr. Adams, is also asserting a claim under the contract for damages upon which she does not have a separate and distinct claim[,] . . . it is proper for [Defendant] to aggregate her Consumer Credit Protection Act claim to exceed the $75,000 requirement." (*Id.*)   Defendant notes that "[t]wo or more plaintiffs may aggregate their claims against the same defendant, to make up the required jurisdictional amount, only when they unite to enforce a single title or right in which they have a common or undivided interest against the defendant . . ." (*Id.* at 4-5.) (citing *Manufacturers Casualty Insurance Company v. Coker,* 219 F.2d 631, 633-34 (4th Cir.1955)).   Defendant argues that Plaintiffs are asserting a single right because "Mrs. Adams was not a signatory and did not have a separate and independent claim" and yet "Plaintiffs themselves are jointly seeking statutory damages under the [WVCCPA]." (*Id.* at 5.) Defendant contends "[a] non-signatory to a consumer contract does not have a separate and distinct claim under the [WVCCPA]." (*Id.* at 2) (citing *McCoy v. Southern Energy Homes, Inc*., Civil Action No. 1:09-cv-1271, 2012 WL 14095333, at * 10 (S.D.W. Va. April 23, 2012) (Faber, J.))

---

[2]  Defendant stated that there is diversity of citizenship between the parties because Plaintiffs are "West Virginia Residents" and Defendant is "a limited liability company with its principal place of business in Michigan, with no members being citizens of West Virginia." (Notice of Removal at 1-2.)

Upon consideration of Plaintiffs' Complaint, Defendant's submissions, and the entire record, the Court finds that Defendant has established by a preponderance of the evidence the existence of diversity jurisdiction.   Because Defendant has shown that Plaintiffs' claims "enforce a single title or right in which they have a common undivided interest," aggregation of their claims is warranted. *Manufacturers Casualty Ins. Co.,* 219 F.2d at 633-34.   Even though Mrs. Adams, a non-signatory to the debt at issue, is not a consumer under the WVCCPA, and therefore, "do[es] not have an express cause of action under the WVCCPA," the aggregation of her common law claims will likely exceed $1.[3] *McCoy*, 2012 WL 14095333, at * 10.   Accordingly, Defendants have shown that the amount in controversy exceeds $75,000.   Therefore, based on the record, the Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

### III.     STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).   A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. (*Id.*)   The moving

---

[3]  As noted above, in their Complaint, Plaintiffs stipulate that "[n]either Plaintiff shall either individually seek or accept an amount greater than $74,999.00 in this case, including any award of attorney fees, but excluding interest and costs." (Compl. ¶ 10.)

6

party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23.

In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. Moreover, in considering a motion for summary judgment, "the district court 'must review the motion even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'" *Robinson v. Wix Filtration Corp. LLC,* 599 F.3d 403, 409 n.8 (4th Cir.2010) (quoting *Custer v. Pan Am. Life Ins. Co.,* 12 F.3d 410, 416 (4th Cir.1993.)

## IV.    APPLICABLE LAW

"The WVCCPA is a 'comprehensive consumer protection' law that incorporates elements of the Uniform Consumer Credit Code, the National Consumer Act, and older West Virginia statutes." *Countryman v. NCO Financial System, Inc*., Civil Action No. 5:09-cv-0288, 2009 WL 1506720, at *2 (S.D.W.Va.2009) (Johnston, J.) (quoting *Cadillac v. Tuscarora Land Co.*, 412 S.E.2d 792, 794 (W.Va.1991)).   It places "restrictions on the manner in which debt collectors may attempt to collect debts." (*Id.*)

The Supreme Court of Appeals of West Virginia has indicated that the WVCCPA is to be construed broadly:

> The purpose of the [WVCCPA] is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action. As suggested by the court in *State v. Custom Pools,* 150 Vt. 533, 536, 556 A.2d 72, 74 (1988), "[i]t must be our primary objective to give meaning and effect to this legislative purpose." Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended.

*State ex re. McGraw v. Scott Runyan Pontiac-Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516, 523

(W.Va.1995) (internal citation omitted.)

## V.   DISCUSSION

### A.  Count I – WVCCPA Claims

Plaintiffs allege that Defendant "engaged in repeated violations of Article 2 of the WVCCPA, including but not limited to: (a) [e]ngaging in unreasonable or oppressive or abuse conduct. . . in connection with the attempt to collect a debt by placing telephone calls to [their] residence in violation of WV Code §46A-2-125; (b) [c]ausing [their] phone to ring or engaging persons, including the Plaintiffs, in telephone conversations repeatedly or continuously or at unusual times or at times known to be inconvenient, with the intent to annoy, abuse, or oppress Plaintiffs in violation of WV Code § 46A-2-125(d); (c) using unfair or unconscionable means to collect a debt from Plaintiff in violation of WV Code §46A-2-128(e) by communication with Plaintiff after it appeared that Plaintiff was represented by an attorney and attorney's name and address were known or could be easily ascertained; or (d) failing to clearly disclose the name of the business entity making a demand for money upon Plaintiffs' indebtedness in violation of WV Code §46A-2-127(a)." (Compl. ¶ 10.) Defendant argues that it should be granted summary judgment on all of Plaintiffs' alleged claims under the WVCCPA because "the allegations against

8

Defendant do not assert a cause of action as against Defendant." (Def.'s Mem. at 3-4.)   Defendant specifically addresses three of the four alleged WVCCPA violations - those under Sections 46A-2-125, 46A-2-125(d), and 46A-2-128(e).   The Court will address each in argument.

First, Defendant argues that it did not violate Section 46A-2-125 of the WVCCPA because "placing calls to a resident is not one of the identified violations." (*Id.* at 4.)   Defendant contends that "[t]he statute goes on to identify various conduct which violated §46A-2-125, but placing calls to a resident is not one of the identified violations." (*Id.*)   Defendant asserts that [e]ven federal law recognizes the right to contact debtors at their residence." (*Id.*) (citing 47 C.F.R. §64.1200(c)(1) ("No person or entity shall initiate any telephone solicitation to: (1) Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m.   . . .")).   Therefore, Defendant argues that "[it] should be granted summary judgment as to any alleged violation of West Virginia Code §46A-2-125 for simply calling Plaintiffs at their residence." (*Id.*)

Section 46A-2-125 forbids debt collectors from "unreasonably oppress[ing] or abus[ing] any person in connection with the collection of or attempt to collect on any claim alleged to be due and owing by that person or another." W.Va.Code § 46A-2-125.   Plaintiffs allege that Defendant violated this provision "*by placing telephone calls to [their] residence.*" (Compl. ¶10.)   Plaintiffs do not allege a high volume of telephone calls, or that the calls were abusive, or that the telephone calls occurred "repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number[,]" which the Code specifically prohibits in Section 46A-2-125(d). W.Va.Code § 46A-2-125(d).   In fact, Plaintiffs do not describe the "telephone calls to [their] residence" at all.   The Court notes that in Defendant's Statement with Respect to the Subject Matter Jurisdiction of the Court,

Defendant states that its records (attached to the Statement) reflect that "more than thirty-five (35) attempts to contact Plaintiff, Joey Adams." (Document 17 at 2.)[4]  However, the Court cannot reasonably infer "unreasonable or oppressive or abusive contact" from Defendant's records. The Court is not in the business of deciphering codes, and Defendant has not provided any key to understanding their call log/account summary. The Court cannot discern which entries memorialize a telephone call to Plaintiffs, and therefore, cannot determine whether the calls were "unreasonable or oppressive or abusive."  Moreover, Plaintiffs did not respond to Defendant's motion.   Therefore, even viewing the facts in the light most favorable to Plaintiffs, the Court finds that there is no genuine issue of material fact and that Defendant is entitled to summary judgment with regard to Plaintiffs' claim under Section 46A-2-125. *Matsushita*, 475 U.S. at 587-88; *Celotex*, 477 U.S. at 322-23.

Second, Defendant argues that Plaintiffs' claim under Section 46A-2-125(d) must also be dismissed because "[Plaintiffs] have **not identified** any individual who will testify that the volume of calls or the quantum of calls was unreasonable." (Def.'s Mem. at 5) (emphasis in original.) Moreover, Defendant asserts that "Plaintiffs cannot possibly show that Defendant acted unreasonably because they have not put forth any evidence on this point." (*Id.*)   Defendant argues that "summary judgment as to the quantum or timing of calls to the [Plaintiffs] is appropriate because [they] have not offered any evidence to show that the number of calls was unreasonable." (*Id.*)

Viewing the facts in the light most favorable to Plaintiffs, the Court finds that there is no genuine issue of material fact with regard to Plaintiffs' claim under Section 46A-2-125(d).

---

[4] The Court notes that while this document was not attached to Defendant's motion for summary judgment, it is in record and the Court, in reviewing a motion for summary judgment, "may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

*Matsushita*, 475 U.S. at 587-88; *Celotex*, 477 U.S. at 322-23.   As discussed above, Plaintiffs have not offered any evidence that Defendant "caus[ed] Plaintiffs' phone to ring or engag[ed] persons, including the Plaintiffs in telephone conversations repeatedly or continuously or at usual times or at times known to be inconvenience, with the intent to annoy, abuse, or oppress Plaintiffs in violation of [Section] 46A-2-125(d)." (Compl. ¶ 10.)   Therefore, based on the evidence before the Court, the Court finds that Defendant is entitled to summary judgment with respect to the alleged violations of Section 46A-2-125(d).

Third, Defendant argues that "[it] is entitled to summary judgment for any alleged violation of West Virginia Code § 46A-2-128(e) that occurred prior to March 2011." (Def.'s Mem. at 6.)   In support, Defendant notes that "[Plaintiffs] are claiming that each call of Defendant after the alleged July 6, 2010 notification represents a violation of WVCCPA and entitled [Plaintiffs] to statutory damages." (*Id.*) However, Defendant contends that "plaintiffs were not represented by Counsel until '[a]pproximately, March, 2011.'" (*Id.*) (citing Plaintiffs' Answers and Responses to [Defendant's] First Set of Interrogatories, Requests for Production and Requests for Admissions ("Def.'s Mot. Ex. A.") (Document 12 at 3-24) at 2.)[5] Defendant argues that "[u]nder §46A-2-128(e), there can be no violation if Plaintiffs are in fact not represented by counsel at the time Defendant allegedly contacted Plaintiffs." (Def.'s Mem. at 6.)

Section 46A-2-128(e), the Representation Provision, provides in pertinent part, that:

No debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:

. . .

---

[5]  The third question states: "Identify the date Plaintiffs first contacted Timothy P. Lupardus about representation." Plaintiffs answered: "[a]pproximately, March, 2011." (*Id.*)

(e) Any communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained . . .

W.Va. Code §46A-2-128(e).   In other words, communications with a debtor are prohibited when it appears that the debtor is represented by an attorney and "the attorney's name and address are known, or could be easily ascertained." (*Id.*)

Viewing the facts in the light most favorable to the Plaintiffs, the Court finds that there is a genuine issue of material fact as to whether Plaintiffs were represented by counsel prior to March 2011 and that Defendant is not entitled to judgment as a matter of law with respect to Plaintiffs' claims under Section 46A-2-128(e). *Matsushita*, 475 U.S. at 587-88; *Celotex*, 477 U.S. at 322-23. Defendant's own records reflect that on July 6, 2010, Plaintiff, Joey Adams, "SD TO TALK TO HIS LAWYER GVE LAWYER INFO. . . ATTORNEY S NAME AND #? TIME LUPARDUS COURT LOCATION/ DISTRICT ? # 304.732.0250." (Document 17 at 17-18.) Defendant's records also reflect that Plaintiff gave Defendant his attorney's name and number again on July 8, 2010 and July 10, 2010. (*Id.* at 16-17.) The entry for July 10, 2010, specifically states "CUSTOMER GAVE ATTORNEY INFO, PER WV LAW, NEEDS TO BE DNC STATUS, FU WITH ATTORNEY . . . SD ATTRNY NAME IS TIM LAPARTUS, 3047320250 . . . SD PAID RETAINER FEE . . . ENTERING IN DNC B/C OF WV STATE LAWS." (*Id.* at 16.) Although Plaintiffs state in their Answers and Responses to Defendant['s] First Set of Interrogatories, Request for Production and Requests for Admissions that they first contacted Timothy P. Lupardus about representation in "[a]pproximately March 2011[,]" Defendant's records and Plaintiffs' answers to other questions indicate otherwise. (Document 12 at 3-4.) As stated above, in considering Defendant's motion for summary judgment, the Court will draw any permissible

12

inference from the underlying facts in the light most favorable to the Plaintiffs. *Matsushita*, 475 U.S. at 587-88.   Based on the foregoing, the Court finds that Defendant's motion with respect to Plaintiff's claims under Section 46A-2-128(e) should be denied.

The Court notes that although Defendant argues that it should be granted summary judgment on all of Plaintiffs' alleged claims under the WVCCPA because "the allegations against Defendant do not assert a cause of action as against Defendant," (Def.'s Mem. at 3-4), Defendant has not made any arguments as to why it is entitled to judgment as a matter of law with respect to Plaintiff's claim under WV Code §46A-2-127(a). Therefore, the Court finds that Defendant's motion, to the extent it seeks summary judgment as to that claim, should be denied.

### B.  Count II – Negligent Failure to Train, Supervise, Monitor or Control

In Count II, Plaintiffs allege that "Defendants negligently failed to train, supervise, monitor or otherwise control its employees to ensure that its employees did not violate the WVCCPA as alleged herein." (Compl. ¶12.)   Defendants have not specifically moved for summary judgment as to this count.   However, to the extent that Defendant was relying on its arguments above to render Count II moot, Defendant's motion as to this count should also be denied.

### C.  Count III – Intentional Infliction of Emotional Distress

In Count III, Plaintiffs allege that the telephone calls described above constitute intentional infliction of emotional distress.   In West Virginia, in order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must prove the following elements:

> (1) the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from its conduct; (3) the

13

> actions of the defendant caused the plaintiff to suffer emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 3, *Travis v. Alcon Laboratories, Inc.,* 202 W.Va. 369, 504 S.E.2d 419, 425 (W.Va.1998). The West Virginia Supreme Court of Appeals has stressed that "liability depends upon whether the conduct has been so extreme and outrageous 'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" (*Id.*) (quoting *Johnson v. Hills Dep't Stores,* 200 W.Va. 196, 488 S.E.2d 471, 474 (1997)).   Moreover, the court explained that:

> [i]n evaluating a defendant's conduct in an intentional or reckless infliction of emotional distress claim, the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress. Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination.

Syl. pt. 4, *Travis,* 504 S.E.2d at 421.

Defendant argues that "[it] should be granted summary judgment on the [Plaintiffs'] claims of the intentional infliction of emotional distress because Defendant's conduct was not outrageous and the [Plaintiffs] did not suffer severe emotional distress." (Def.'s Mem. at 9.)   In support, it claims that "Defendant simply placing calls to [Plaintiffs] to collect on a debt owed by [Plaintiffs] is simply not the type of conduct that may reasonably be considered outrageous." (*Id.* at 8.) Moreover, Defendant contends that "[Plaintiffs] must also prove that the emotional distress they suffered was so severe that no reasonable person could be expected to endure it." (*Id.*) However, Defendant stresses that "no doctor, psychologist or any other medical profession has been identified as a witness in this matter." (*Id.* at 9.)

14

The Court finds that Plaintiffs have failed to show that Defendant's conduct satisfies any of the four required elements to establish such a claim.   In fact, Plaintiffs have failed to present any evidence whatsoever that creates a genuine issue of material fact with respect to this claim. Plaintiffs' conclusory allegations in the Complaint are insufficient to withstand a motion for summary judgment.   Plaintiffs did not even respond to Defendant's motion.   Since Plaintiffs have tendered no evidence in support, the Court finds there is no genuine dispute of material fact as to this claim and finds that Defendant is entitled to summary judgment.   Therefore, Defendant's motion with respect to Count III should be granted.

### C.      *Count IV – Invasion of Privacy*

In Count IV, Plaintiffs assert an invasion of privacy claim based on "[t]he acts of Defendant in placing telephone calls in the manner described herein to Plaintiffs' home telephone number . . ." (Compl. ¶ 18.)   Plaintiffs allege that Defendant's actions "invaded, damaged and harmed [their] rights of privacy." (*Id.*) Plaintiff further alleges that "[a]s a result of Defendant's actions, [they] each suffered emotional distress . . . [and] have been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued, and otherwise caused indignation and distress." (Compl. ¶¶ 19-20.)

"[I]n West Virginia, an 'invasion of privacy' includes (1) an unreasonable intrusion upon the seclusion of another . . ." (*Crump v. Beckley Newspapers, Inc.,* 173 W.Va. 699, 713 (W.Va.1984)). An "[u]nreasonable intrusion upon another's seclusion occurs when '[o]ne . . . intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or [his or her] private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable

person.'" *Harbolt v. Steel of West Virginia, Inc.,* 640 F.Supp.2d 803, 817 (S.D.W.Va.2009) (Chambers, J.) (quoting Restatement (Second) of Torts § 652B).

The Court finds that there is no genuine issue of material fact as to Plaintiffs' claim of invasion of privacy. Plaintiffs offer no citations to the record in support of their claim and present no evidence or proof of damages. (*See, Ferrell v. Santander Consumer USA, Inc.,* 859 F.Supp.2d 812, 819 (S.D.W. Va. Mar. 19, 2012) (Copenhaver, J.)). For example, Plaintiffs do not offer evidence that the phone calls were made within a short time frame or that they were placed at inappropriate hours. (*See,* Document 17; Compl.) In fact, Plaintiffs do not offer any evidence at all in support of their claim. Accordingly, Plaintiffs' invasion of privacy claim fails. Therefore, the Court finds that Defendant's motion with respect to Count IV should be granted.

### CONCLUSION

Wherefore, based on the findings herein, the Court does hereby **ORDER** that the *Motion of Defendant, Chrysler Financial Company, LLC in Support of [Partial][6] Summary Judgment* (Document 12) be **GRANTED IN PART** and **DENIED IN PART.** Specifically, the Court **ORDERS** that Defendant's motion be **GRANTED** with respect to Plaintiffs' claims under Sections 46A-2-125 and 46A-2-125(d) of the WVCCPA and Counts III and IV of Plaintiffs' Complaint and **DENIED** with respect to Plaintiffs' claim under Section 46A-2-128(e) of the WVCCPA.

---

[6] The Court notes that Defendant did not specifically move or assert arguments for summary judgment with respect to Plaintiffs' claim under Section 46A-2-127(a) or Count II. However, to the extent that Defendant's motion seeks summary judgment as to those claims, the Court finds that Defendant's motion should be denied.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any

unrepresented party.

ENTER:        April 3, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA